UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JON ABBOTT, an individual,

    Plaintiff,

v.

HOME DEPOT U.S.A., INC. a Delaware Corporation a/k/a HOME DEPOT, DOES I-X and ROE CORPORATIONS I-X,

    Defendants.

2:10-CV-00972-LRH-PAL

ORDER

Before the court are Defendant Home Depot's Motion to Bar the Testimony of Plaintiff's Expert David Ingebretsen (#31[1]) and Motion for Summary Judgment (#30). Plaintiff Jon Abbott filed an opposition (#32), and Home Depot replied (#33).

**I.     Facts and Procedural History**

This diversity action for strict products liability and breach of warranty involves the Krause "MultiMatic" 16-foot articulating ladder. Abbott purchased his ladder from Home Depot in Las Vegas around 1998 and used it approximately 12 to 20 times over the following decade. On July 1, 2009, Abbott was using the ladder as an A-frame stepladder to access the attic in his Las Vegas home. After ascending and descending the ladder 5 to 6 times without incident, Abbott climbed

---

[1] Refers to the court's docket entry number.

out of the attic onto the ladder and began his descent when the side he was on folded inward at the hinges, collapsing the ladder forward and causing him to fall to the floor and sustain injuries.

The MultiMatic ladder consists of four sections connected by three pairs of locking hinges, which allow the ladder to be configured in various working positions, including straight, standoff, scaffold, stepladder (A-frame), and storage.  Each hinge contains a locking mechanism that is designed to automatically lock when the ladder sections are rotated into position.  Each hinge has a spring-loaded, red locking bolt and a notched hinge plate, such that when the hinge is rotated and the notch passes the locking bolt, the bolt is supposed to spring into the notch, locking the hinge.  Each pair of hinges is connected by a brass release bar, which is roughly U-shaped and is positioned on the underside of the ladder frame.  When the hinge is locked, the release bar is positioned against the frame.  The hinges are unlocked by rotating the release bar away from the frame, thereby releasing the red locking bolts and allowing the hinges to rotate.  The user can visually inspect the red locking bolts to see if they are in the locked or unlocked position.  The bolts are also visible on both sides of each hinge, so that the bolts on each pair of hinges may be viewed from either side of the ladder.

Abbott knew that it was necessary for the red locking bolts to be engaged for the hinges to be locked.  Nonetheless, in his experience using the ladder, visual confirmation that the locking bolts were engaged was not sufficient to ensure the hinges were locked.  Even after following the instructions and visually confirming the locking bolts were engaged, the hinges would still collapse.  Abbott considered the instructions confusing but believed he was following them correctly.  Abbott therefore came to rely on additional indicators to confirm that the hinges were locked, including hearing the audible "click" or "snap" of the locking bolts engaging and, most importantly, physically testing the ladder's joints by pushing, pulling and lifting the frame.  Abbott testified that when these auditory and physical tests were successful, the locking bolts were always engaged on further visual inspection.  Ultimately, Abbott came to rely primarily on the auditory

"click" and physically testing the hinges, rather than on visual inspection of the locking bolts. Sometimes he would also visually confirm that the bolts had engaged, but sometimes not.

On the day in question, Abbott concedes that he probably did not visually confirm that the red locking bolts were engaged. Instead, he relied on his alternative method of confirming that the hinges were locked. Abbott's method failed on this occasion, however, as it is undisputed that the hinges were not locked.

Home Depot's expert, Dr. Mack A. Quan, has testified that, based on the fact that Abbott ascended and descended the ladder 5 to 6 times before it collapsed, it is likely that the locks were partially engaged. The observations of Abbott's expert, David M. Ingebretsen, are consistent with Quan's opinion. According to his report, Ingebretsen inspected Abbott's ladder and observed that a partially engaged hinge still provided some resistance to collapse; however, application of pressure to a partially engaged hinge would tend to cause the hinge to give way rather than more fully engage. Ingebretsen also observed that even when the audible "click" of the locking bolt engaging was heard, the bolt was not fully engaged on visual inspection. He was able to fully engage the bolt with additional effort, however.

On June 21, 2010, Abbott filed this action against Home Depot in state court, alleging two claims for relief: (1) strict products liability, and (2) breach of warranty. On June 21, 2010, Home Depot removed the action on the basis of diversity jurisdiction. Following discovery, Home Depot now moves to exclude the testimony of Ingebretsen and for summary judgment.

**II.  Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the

light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *Id.* at 252.

**III.   Discussion**

"To bring successfully a strict products liability claim, a plaintiff must show that: 1) the product had a defect which rendered it unreasonably dangerous, 2) the defect existed at the time the product left the manufacturer, and 3) the defect caused the plaintiff's injury." *Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 571 (Nev. 1992). To establish proximate causation in a products liability case, the plaintiff must establish a nexus "between the design defect of the product and the

injury–that is, the plaintiff must show that the design defect in the product was a substantial factor in causing his injury." *Price v. Blaine Kern Artista, Inc.*, 893 P.2d 367, 370 (Nev. 1995) (internal quotation marks and citation omitted). "[I]f a tortfeasor inflicts injuries on a plaintiff that are identical to what the plaintiff would have received notwithstanding some abstract defect in the involved product, the manufacturer may be absolved of liability; however, if the product defect was a substantial factor in producing the injury, thereby constituting a legal cause of the injury, the manufacturer will be held liable." *Id.*

Home Depot's contentions proceed in two parts. First, Home Depot contends the report of Ingebretsen, Abbot's expert, should be excluded. Specifically, Home Depot argues that Ingebretsen is not qualified to opine on defects in ladder design, and even if he were qualified, his theory of defect—that the ladder is defective because users are likely to erroneously rely on the audible "click" as an indicator that the hinges are locked—is based on speculation and is irrelevant because it lacks any connection to the cause of this accident. Also, in reply to Abbott's submission of a supplemental affidavit by Ingebretsen, Home Depot contends that the additional material was not previously disclosed and therefore must be excluded as untimely under Rules 26(e) and 37(c). Second, Home Depot contends that, without Ingebretsen's testimony, Abbott cannot show that the MultiMatic ladder contained a defect, or that Ingebretsen's "click" theory has any relevance to Abbott's claim. Home Depot therefore argues that it is entitled to summary judgment because the only proof of causation is Abbott's admission that he failed to visually confirm that the locking bolts were engaged before climbing the ladder.

Having reviewed the arguments and evidence presented, the court need not decide at this time whether Ingebretsen's supplemental affidavit must be excluded, nor whether Ingebretsen is qualified to opine on whether the ladder is defective because the audible "click" is a false indicator that the hinges are locked. Even if Ingebretsen's opinions and affidavit were excluded, it would have no impact on the court's resolution of the companion summary judgment motion, as the court

5

rejects Home Depot's core contention that Abbott is unable to establish the elements of defect and causation in the absence of such evidence.[2]

Contrary to Home Depot's representations regarding Abbott's testimony, Abbott in fact testified that he relied in part on the audible "click" of the locking bolts engaging as an indicator that the hinges were locked. Also, in addition to his opinions on the ultimate matter of defect, Ingebretsen's report contains observations from his personal inspection of Abbott's ladder that the red locking tabs would not always fully engage even when the "click" was heard. Even if Ingebretsen were not qualified to opine on whether this constitutes a "defect" in ladder design, Home Depot makes no contention that Ingebretsen is unqualified to inspect and operate the ladder, hear a "click," and visually inspect the position of the red locking bolts. Furthermore, an expert's opinion is not required for a jury to draw the inference from this evidence that the audible "click" is a false indicator that the hinges were locked and that Abbott's reasonable reliance on this indicator was a substantial factor in causing the accident in question.

The court also rejects Home Depot's suggestion that the "click" theory is the only basis for Abbott's claims. Abbott's own testimony, Ingebretsen's observations, and the opinions of Home Depot's expert, Dr. Quan, all evidence other aspects of the ladder's design that a jury could find were substantial factors in causing the accident. For instance, Abbott testified that the instructions were confusing and insufficient to insure proper locking of the hinges. While Abbott knew that full engagement of the locking bolts was necessary for the hinges to be locked, he also testified that in his experience the hinges would not be locked even after he followed the instructions and visually confirmed that the locking bolts were engaged. That is, Abbott found that the red locking bolts themselves were not reliable indicators of a locked hinge and that additional checks—including

---

[2]On the materials presented, the court is inclined to find that Ingebretsen, as an experienced mechanical engineer, is qualified to offer opinions on alleged design defects in the MultiMatic ladder, provided that such testimony otherwise complies with the requirements of Federal Rule of Evidence 702. Nonetheless, because Home Depot's qualifications objection is immaterial to resolution of the present dispositive motion, the court reserves ruling on the objection.

6

auditory and physical—were necessary. Also, the testimony of Abbott, Ingebretsen and Quan, taken together, evidence that the hinge design may have contributed to the accident, in that a partially engaged hinge would provide sufficient resistance to falsely indicate the hinge was locked, yet force applied to that hinge would cause the hinge to release rather than more completely engage.

Home Depot fails to address these theories of defect and the substantial evidence supporting them. Also, as to the "click" theory it does address, the court rejects Home Depot's contention that the supporting evidence is solely limited to the opinions of Abbott's expert. The court therefore finds that Home Depot has failed to establish the absence of any genuine issue of material fact as to either defect or causation, precluding summary judgment.

Home Depot's motion to exclude Ingebretsen's report shall also be denied, although without prejudice. The report contains not only Ingebretsen's opinions but also observations based on his physical inspection of the Abbott ladder. The motion fails to address these observations and instead focuses solely on the admissibility of Ingebretsen's opinions, which even if excluded would have no effect on this court's resolution of Home Depot's summary judgment motion.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (#30) and Motion to Bar the Testimony of Plaintiff's Expert David Ingebretsen (#31) are DENIED.

IT IS FURTHER ORDERED that the parties shall lodge their proposed joint pretrial order within thirty (30) days from entry of this Order. *See* Local Rule 16-4 and 26-1(e)(5).

IT IS SO ORDERED.

DATED this 19th day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE